7429

### LINDLER v. SOUTHERN RY.

1. RAILROADS—ENGINES—NEGLIGENCE—ORDINANCES.—Violating a city ordinance by leaving an engine standing on a street crossing is negligence *per se.* Under the evidence here the trial Judge properly sent to the jury the issue, whether an engine standing on a street crossing emitted steam in such an unusual and unnecessary manner as that a traveler's horse was frightened and injured him as the proximate result of such emission.

2. RAILROADS—PUNITIVE DAMAGES.—Evidence tending to show a railroad company knowingly violated a city ordinance by leaving its engines standing on a street crossing emitting steam with no one in charge of them, will support a verdict for punitive damages in favor of one suffering injury resulting therefrom.

Before KLUGH, J., Richland, June, 1909. Affirmed.

Action by Simeon O. Lindler against Southern Railway Co. From judgment for plaintiff, defendant appeals.

*Mr. E. M. Thomson,* for appellant.

*Messrs. Nelson, Nelson & Gettys,* contra.

February 14, 1910. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff, through the wrongful acts of the defendant.

The following allegations are set out in the complaint: "That on or about the 11th day of February, 1905, plaintiff was driving his mare, drawing a single wagon, loaded, from the city of Columbia to his home, which was about five miles out on the 'Two Notch' road, and in so driving, it was necessary for plaintiff to drive down Laurel street of the city of Columbia, and over and across the several tracks of defendant, which crossed said Laurel street on Laurens street. That the mare was gentle, and not afraid of street cars, automobiles or engines. That when plaintiff drove up to near where he would have to cross said tracks, there were two of defendant's engines, under steam, stopped and standing on one or more of defendant's tracks across said Laurel street, a public street of the city of Columbia, one hundred feet wide, about twenty-five or thirty feet apart, blocking and obstructing said Laurel street, excepting twenty-five or thirty feet between said engines, and one of defendant's watchmen or flagmen was standing at said crossing.

"That said blocking and obstructing of said Laurel street by defendant, and allowing its said engines to stop and

remain standing on said crossing, was in violation of the ordinances of the city of Columbia.

"That in order for plaintiff to proceed on his way, it was necessary for him to pass between said engines, which he proceeded to do, without being stopped or warned by said watchman or flagman of defendant.

"That while plaintiff was crossing said tracks, the defendant carelessly, negligently, recklessly, wilfully and wantonly, and in utter disregard of the rights of the public and of this plaintiff, allowed its said engines to remain stopped and standing in said street, under steam, blocking and obstructing said street, caused its said engines to emit steam, and make various loud and frightful noises, whereby the mare became frightened, jumped, ran and kicked plaintiff, etc."

The defendant denied the allegations of the complaint, and set up the defense of contributory negligence.

The defendant did not offer any testimony, but at the close of the testimony in behalf of the plaintiff, requested his Honor, the presiding Judge, to direct a verdict in its favor, on the following grounds:

"There is no evidence offered tending to show any negligence or wilfulness, as alleged in the complaint, that was the proximate cause of the accident.

"There is no evidence of wilfulness.

"There is no evidence whatever, showing any unusual or unnecessary noise made by the escape of steam or otherwise from those engines. Unless there had been testimony to that effect, there is absolutely no foundation for or cause of action on behalf of the plaintiff."

The motion was refused, and the jury rendered a verdict in favor of the plaintiff, for the sum of $1,212.50. The defendant appealed on the ground that the Circuit Judge erred in refusing the motion to direct a verdict; and upon the ground that the presiding Judge refused to charge the following request:

"There is no evidence tending to show that the proximate cause of the alleged accident was the obstruction of the crossing, if, indeed, the crossing was negligently obstructed; hence, if you believe from the evidence, that there was no unusual or unnecessary noise made by the engine in question, then your verdict must be for the defendant."

The first question that will be considered is, whether there was any testimony tending to show negligence, on the part of the defendant, which was the proximate cause of the injury.

The ordinance provides that "it shall be unlawful for any railroad train, engine, car, or part of railroad train, to be stopped on any crossing in the city of Columbia, or to be permitted to remain stopped on any crossing of any street of the city, under a penalty of not less than ten dollars, nor more than forty dollars, for each and every offense." The violation of this ordinance was negligence *per se*. *Dyson* v. *Ry.,* 83 S. C., 354.

The proposition upon which the appellant's attorney relies is thus stated in the argument:

"It matters not whether there was a technical violation of the ordinance (set out at page 17 of the Case), because we have the undisputed facts that there was ample space for plaintiff to pass between these engines and over the crossing. The mare did not take fright, because the street was a little blocked, but on account of the escaping steam from the engines. It is a demonstrated fact, that she took fright at the escaping steam, and nothing else.

"So that we have the single question—whether there was any negligence or wilfulness shown in allowing steam to escape from these engines? An engine can not be operated without steam, and when it is at rest, as these engines were, the steam must necessarily escape, and so long as there is nothing unusual or unnecessary about the escaping steam,

no negligence can be inferred, and no liability would attach, when a horse takes fright on account of the proper escape of steam."

The question is not whether there was ample space for the plaintiff to pass between the engines, but whether they were at such a place, and in such close proximity, as to render it dangerous, by causing horses to become frightened.

The escape of steam is incidental to the operation of an engine, and its effect cannot properly be considered apart from its connection with the engine, when the defendant placed its engines on the crossing in violation of the city ordinance. The question whether the engines, and the manner of their operation, was the proximate cause of the injury, presented a question to be determined by the jury.

"The fact that a railroad company obstructs a street or highway, at a public crossing, as by letting a train or cars remain thereon, for a reasonable or lawful length of time, and for proper purposes, is not negligence, and the company is not responsible for injuries caused thereby. But a railroad company is liable for injuries, caused by reason of such obstruction, when it amounts to negligence, as where it allows its trains or cars to remain on the crossing unnecessarily, or for an unreasonable or an unlawful length of time, by reason of which injuries are received by one who attempts, with due care, to cross or go around the obstruction." 33 Cyc., 931-2.

"The usual and proper sounding of whistles or other signals, or the proper escape of steam from its engines, is not negligence, and does not make the railroad company responsible for injuries caused by horses becoming frightened thereat. But where the employees unnecessarily, negligently, or wantonly blow the whistle, or allow the steam to escape, thereby causing horses to become frightened, the railroad is responsible for the resulting injury, where the acts are done in violation of statute." 33 Cyc., 937-8.

Under the circumstances herein, it cannot be successfully contended that the escape of the steam was not unusual or unnecessary.

The next question that will be considered is, whether there was any testimony tending to show that the plaintiff was entitled to punitive damages.

The following testimony tends to show, not only that the defendant had notice of the ordinance, but time and again violated it, intentionally. "Mr. Nelson: State whether the Southern knew they had no right to keep cars on the street, and why they knew it, and for what reason? A. I knew they tried to keep them open and could not keep them open. Q. Who tried? A. Council. Q. How do you know? A. Policeman came there and told them to move, and before they got away, they would come back again; he told me to keep them open, I could not keep them open; they could not keep them open and I knew I could not. They would run them back on the track."

The following testimony also tends to show that the engines were allowed to remain on the crossing, such an unreasonable length of time, as indicated a reckless disregard of the rights of the traveling public:

"Q. Which engine had been standing there first, one on the north or the south side? A. On the north. Q. How long had the one on the north side been there? A. I don't know, been there an hour or so. Q. Anybody on it? A. Nobody on it. Q. Was any steam escaping? A. Steam was escaping out of both of them. Q. The one on the south side, how long had it been there? A. They stopped there at one o'clock to go to dinner. Q. What is the dinner hour out there? A. One or two. Q. And it was stopped there at one o'clock? A. Yes, sir. Q. What time did Mr. Lindler get there? A. Nearly two. Q. Those engines were standing there all the time? A. Yes, sir. Q. Anybody on it? A. Nobody on it."

Judgment affirmed.